IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARLOS ELIAZAR ROCHA,

        Plaintiff,

v.

                                                        No. 16-cv-1088 KRS

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

        Defendant.

## OPINION AND ORDER DENYING MOTION TO REVERSE OR REMAND AND AFFIRMING AGENCY'S DECISION

Plaintiff Carlos Eliazar Rocha, *pro se*, seeks review of the Social Security Administration's decision concluding he is not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(e), 423(d), 1382c. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. §636(c)(1); Fed. R. Civ. P. 73(b), the Court has considered Rocha's motion to reverse or remand [Doc. 20], the Commissioner's response in opposition [Doc. 22], as well as meticulously reviewed the administrative record. Because Rocha engaged in substantial gainful activity and the ALJ's determination is otherwise supported by substantial evidence and legally sound, the Court **DENIES** Rocha's motion and **AFFIRMS** the agency's decision.

### I.    FACTUAL BACKGROUND

#### A.    Plaintiff's History

Rocha is forty six. [AR 40]. At the time of Rocha's alleged disability onset date, September 12, 2012, he was forty two and a "younger person" in Social-Security parlance. [AR 40]; 20 C.F.R. §§ 404.1563(c) (explaining that for individuals under 50, the agency "generally

do[es] not consider that a [person's] age will seriously affect [his] ability to adjust to other work"). In terms of education, Rocha completed the tenth grade. Rocha is divorced and the father of three minor and three adult children. [AR 40-41]. His ten-year-old daughter lives with him. [AR 40-41]. As of January 6, 2015, Rocha worked as a truck driver for Raks Building Supply, a full-time position that he has held continuously since 2013. Rocha's previous employment history includes positions as a cashier, loader, and RV salesman.

As the basis for seeking benefits, Rocha alleges that he suffers from pulmonary emboli (blood clots in the lungs), gastric reflux, high blood pressure, anxiety with panic attacks, and post-traumatic stress disorder. Rocha asserts that he is disabled because he is constantly in the emergency room with shortness of breath and tingling and numbness in his hands. [AR 65]. Rocha further reports that he cannot be in a room with people because "it makes [him] nervous, dizzy, makes [his] hands cold and clammy and feels like [he] will faint at times." [AR 65].

### B.  Procedural History

On November 8, 2012, Rocha filed applications for disability insurance benefits and supplemental security income. [AR 177-89]. Rocha alleged a September 12, 2012 onset date, the day he says he no longer was able to work. [AR 177; 184]. The applications were denied both initially and on reconsideration. [AR 65-108]. On January 6, 2015, ALJ Charlotte Wright conducted a hearing pursuant to Rocha's request for review. [AR 30-64]. Rocha appeared together with his attorney and testified along with a vocational expert during the proceeding. [AR 30-64]. The ALJ issued a written decision on April 17, 2015 finding that Rocha "has not been under a disability, as defined in the Social Security Act, from September 12, 2012, through the date of this decision." [AR 24]. On August 2, 2016, the ALJ's decision became the

Commissioner's when the Appeals Council denied review. [AR 1-3]. Rocha filed the instant complaint in this Court on October 3, 2016. [Doc. 1].

## II. STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standard. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118 (citation and internal quotation marks omitted). The Court may not, however, reweigh the evidence, try the issues *de novo*, or substitute its judgment for the ALJ's. *See Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

## III. ANALYSIS

### A. <u>Disability Framework</u>

A plaintiff is entitled to social security benefits if he is disabled as defined by the Social Security Act. "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). As here, when the plaintiff's application is denied initially and on reconsideration, the ALJ employs a five-step

sequential analysis to evaluate disability. Steps one through four require the plaintiff to prove (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable" "impairment" "or a combination of impairments" that either has lasted or is expected to last at least one year; (3) the plaintiff's alleged impairments meets or equals one of the presumptively disability impairments the agency has listed; and (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv). At Step 5, the Commissioner must show that the plaintiff retains the residual functional capacity to perform work in the national economy in light of his age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v); *Grogan*, 399 F.3d at 1261. As the term "sequential" connotes, a finding against the plaintiff at any stage of the analysis ends the analysis.

### B.   The ALJ's Determination

At step one of the evaluation, the ALJ concluded that Rocha engaged in substantial gainful activity from January 1, 2013 to September 30, 2014. [AR 17]. The ALJ explained that Rocha also was employed in the last quarter of 2012, but his earnings fell below the presumptive threshold for substantial gainful activity. *See* 20 C.F.R. §§ 404.1572  416.972. [AR 17]. Although the ALJ recognized that a plaintiff is "not disabled" under the Social Security Act if he can work full-time, she nonetheless concluded that there was a continuous twelve-month period where Rocha was unable to engage in substantial gainful activity. [AR 17]. As a result, the remainder of the ALJ's analysis focused exclusively on that period. [AR 17].

At step two, the ALJ found Rocha suffered from "PTSD[], generalized anxiety disorder, and panic disorder" which the ALJ deemed severe impairments. [AR 18]. In so doing, the ALJ rejected Rocha's remaining diagnoses as non-severe—hypertension, pulmonary emboli, deep-

vein thrombosis, previous alcohol dependence and benzodiazepine abuse—because they did "not cause more than minimal limitations on his functioning." [AR 18-19].

At step three, the ALJ determined that Rocha's PTSD, anxiety disorder, and panic disorder—alone or in combination—neither met nor equaled one of the impairments the agency lists as precluding substantial gainful activity. [AR 19]. Rocha did have mild restriction on his activities of daily living; moderate difficulties with social functioning; and moderate difficulties with concentration, persistence or pace. [AR 19]. However, the ALJ reasoned, Rocha had no episodes of decompensation of extended duration that would satisfy listing 12.06. [AR 19]. At step four, the ALJ decided that Rocha could not undertake any of his past relevant work, but retained the residual functional capacity to "to perform a full range of work at all exertional levels," except he is limited "to performing simple, routine tasks, and he can have no more than occasional interactions with the public" [AR 20-23].

At step five, the ALJ relied on the testimony of the vocational expert that with Rocha's non-exertional limitations he could secure full-time employment as an auto detailer, hand packager, dump truck driver, marker, mail clerk, and router; and these positions existed in significant numbers within the national economy. [AR 23-24]. The ALJ thus determined that Rocha was not disabled from the alleged onset to the date of her decision. [AR 24].

### C. Challenges to the ALJ's Decision

Rocha assigns two errors to the ALJ's determination. First, he complains that the ALJ afforded "inadequate weight to all the treating professional doctors." Second, he asserts that the ALJ's determination is unsupported by substantial evidence. The Court rejects both. Rocha's near continuous employment since January 1, 2013 precludes a finding of disability at step one of the analysis, without reaching the merits of Rocha's contentions. Upon finding that Rocha

engaged in substantial gainful activity after the onset date of his claimed disability, the analysis should end. However, even if Rocha's substantial gainful activity was not dispositive, the Court determines that the ALJ properly evaluated treating sources and the facts she relied on are not "overwhelmed" by record evidence to the contrary.

### 1. Substantial gainful activity

If the benefits seeker engages in substantial gainful activity, he is not disabled. *See* 20 CFR § 404.1520(a)(4)(1) ("At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled"); §404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience."); *Alexander v. Richardson*, 451 F.2d 1185, 1186 (10th Cir. 1971) ("To recover disability benefits under the Act an applicant must be unable to engage in any substantial gainful activity"). Under the regulations, "[s]ubstantial" refers to "work activity that involves doing significant physical or mental activities," and may include part-time work. 20 CFR § 404.1572(a). "Gainful" contemplates "work activity that [is done] for pay or profit" and includes "any kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. § 404.1572(b).

Whether employment constitutes substantial gainful activity turns primarily on earnings. *See Anchondo v. Colvin*, 2017 U.S. Dist. LEXIS 9792, *37 (D.N.M. Jan. 19, 2017) (explaining "the amount of money earned doing a particular job is a primary consideration in determining whether a person is engaged in substantial gainful activity") (citing 20 C.F.R. §§ 404.1574(a)(1) & 416.974(a)(1)).  A plaintiff is *presumed* to engage in substantial gainful activity where he earned $1010 per month in 2012; $1040 per month in 2013; $1070 per month in 2014; and

$1090 per month in 2015. *See Anchondo*, 2017 U.S. Dist. LEXIS 9792, at *37; POMS DI 10501.015 available at https://secure.ssa.gov/poms.nsf/lnx/0410501015.  Even employment that falls below this threshold may be "probative evidence of [the plaintiff's] ability to perform the duties of a full-time job." *Forster v. Colvin*, 208 F. Supp. 3d 636, 645 (M.D. Pa. 2015) (finding no error in ALJ's denial of benefits where the plaintiff "continued to work as a laborer at an egg processing plant, at a turkey processing plan, an in a manufacturing capacity" months after his alleged onset date, which "appear[ed] to reach the level indicative of substantial gainful activity."); *Solenberger v. Apfel*, 1999 U.S. Dist. LEXIS 7682 (D. Kan. Feb. 16, 1999) ("Any work performed during a period of claimed disability may show that a claimant can engage in substantial gainful activity.")

In this case, the Court is compelled to conclude that Rocha worked substantially and gainfully after his alleged disability onset date and is therefore not disabled. First, as of the administrative hearing on January 6, 2015, Rocha was working full-time as a truck driver:

> Q. [By the ALJ]. . . All right. Do you currently have any source of income yourself?
> A. Yeah. I have been – have no work right now.
> Q. I'm sorry?
> A. Yes.
> Q. And what source of income do you have?
> A. From work.
> Q. And what are you doing?
> A. Truck driving.
> Q. And . . . what company are you driving for?
> A. Raks Building Supply.
> . . .
> Q. And what days do you work?
> A. I work Monday, Tuesday, and then Thursday and Friday, but I explained to them that I had to go part-time, but I've been telling them that for a pretty long time, but they didn't have any other CDL drivers, so I had to fill in for that.

[AR 37].  Thus, Rocha's own testimony establishes he was (1) working full time; and (2) able to do so despite his claimed impairments.

Second, Rocha's earning reports document twenty months of *continuous* employment that exceed the *presumptive* earning thresholds for substantial gainful activity fixed by the agency.  Raks paid Rocha $6,888.00 for the third quarter in 2014; $6216.00 for the second quarter in 2014; $6,033.00 for the first quarter in 2014; $7,101.00 for the fourth quarter in 2013; $6348.00 for the third quarter in 2013; $6,896.00 for the second quarter in 2013; and $5,895.00 for the first quarter of 2013.  [AR 226].  The lowest monthly amount therefore was $1,965.00, which is well above the highest presumptive level in 2015 of $1,090.00.

Finally, although Rocha only made $769.00 from Raks in the fourth quarter of 2012, the period during which he submitted his application for benefits, he was unemployed during a portion of this time and appears to have been rehired the following year. [AR 226]. *Cf. Solenberger*, 1999 U.S. Dist. LEXIS 7682, at *3 (D. Kan. Feb. 16, 1999) ("Any work performed during a period of claimed disability may show that a claimant can engage in substantial gainful activity."). The absence of the final quarter of 2014 also does not require a different conclusion. The administrative hearing was held in early January 2015; it is unlikely the earning's report for the past quarter would be available so soon in the new year, and Rocha confirmed he had been working full-time at the hearing. [AR 37].

Substantial evidence therefore supports the ALJ's ultimate determination that Rocha is not disabled as defined by the Social Security Act, and the Court affirms her decision.

### a.  *Harmless-error analysis*

The Court recognizes that the ALJ did not employ the same analysis above. Instead, she found there was a continuous twelve-month period during which Rocha did not engage in

substantial gainful activity and, on that basis, considered each of the five steps. After carefully reviewing the record, the Court is unable to discern how the ALJ arrived at this determination both because the ALJ does not specify when the continuous period commenced and because the evidence of Rocha's employment does not demonstrate a twelve-month gap during any period of claimed disability. Under different circumstances, vagueness as to the period of the time the ALJ actually considered could itself warrant remand. *See*, *e.g., Lewis v. Berryhill,* 2017 U.S. App. LEXIS 2912*, *5, 2017 WL 676502 (10th Cir. Okla. Feb. 21, 2017) (reversing because one reasons the ALJ gave for rejecting an opinion "was too vague"). In this case, however, the Court concludes any error was harmless and reversal is not required.

As the Tenth Circuit has explained, the Court may "supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e, where based on the material the ALJ did at least consider (just not properly), [the Court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The ALJ considered Rocha's near continuous employment at many times in her decision, but never applied it to the first step of the analysis. To the Court, it appears the ALJ made a simple oversight, and in light of Rocha's uncontroverted earnings, no reasonable administrative fact finder would need to proceed beyond step one of the *sequential* analysis.

A plaintiff engaged in full-time work is antithetical to a finding of disability, and despite the Tenth Circuit's caution in employing harmless error in Social-Security cases, *see id.*, the Court is hard pressed to find a more appropriate set of circumstances in which to apply the doctrine. To conclude otherwise would be to disregard common sense, which despite the esoteric nature of Social-Security law, the Tenth Circuit forbids. *See Keyes-Zachary v. Astrue*,

695 F.3d 1156, 1166 (10th Cir. 2012) (explaining that "merely technical omissions in the ALJ's reasoning do not dictate reversal" and that the Court "should, indeed must, exercise common sense."). The Court therefore affirms the ALJ's determination that Rocha is not disabled.

### 2. The merits of Rocha's arguments

Even if it were necessary to reach the merits of Rocha's other arguments, the Court rejects Rocha's challenge to the weight the ALJ assigned to his doctors as well as to the overall sufficiency of the evidence.

#### a. *Treating Doctors*

Opinions from acceptable sources that have treated a plaintiff are entitled to greater, if not controlling weight, in assessing disability. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (describing the "treating physician rule"); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2) (2016). To determine whether a treating source enjoys controlling weight, the ALJ must consider whether the opinion: (1) is supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) is consistent with the other substantial evidence in the record. *See Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007) (citation omitted). If both conditions are present, then the ALJ must accept the source opinion as controlling. *See id.* Where deficient in either or both respects, the ALJ may not afford the source's assessment controlling weight. *See Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

Even if a treating source's assessment is infirm, the ALJ must nonetheless "consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta*, 500 F.3d at 1077. To do so, the ALJ must examine: (1) the length of the relationship and examination frequency; (2) "the nature and extent of the treatment relationship"—types of treatment provided and testing performed; (3) the extent "to which the physician's opinion is

supported by relevant evidence"; (4) the opinion's consistency with the total record; (5) whether the provider is a specialist in the particular field; and (6) any other considerations brought to the "ALJ's attention which tend to support or contradict the opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (quotation omitted).

At the same time, the ALJ need not state that a treating source's opinion is not entitled controlling weight so long as it is implicit. *See May v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). Nor must the ALJ expressly discuss each of the six factors. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Instead, the ALJ must consider them and "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330 (citation omitted). To avoid remand, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258. In this case, the ALJ properly assigned little weight to the assessments of Nurse Practitioner Cheri Cerghizan and Dr. William Summers

### i. Nurse Practitioner Cerghizan

Cerghizan diagnosed Rocha with panic disorder and PTSD. [AR 681]. She recounted Rocha's lengthy battle with substance abuse as a means of coping with anxiety following sexual abuse and a stint of incarceration. [AR 682]. Cerghizan also reported that Rocha gets panic attacks while driving his truck for work [AR 685]. Rocha told Cerghizan that while "on the road, [he] starts getting shaky, lightheaded, feels like he is going to faint." [AR 690]. Aside from these observations, Cerghizan's records mostly document medications Rocha has been prescribed as well as various problems with side effects. [AR 681-95].

The ALJ took this information as Cerghizan's "intimation" that Rocha was disabled. The ALJ assigned this "assessment" little weight and gave four reasons for the particular weight given: (1) Cerghizan is not an acceptable source to give opinions on mental impairments; (2) Cerghizan did not actually specific any limitations resulting from Rocha's alleged mental impairments; (3) any claim of disability was undermined by Cerghizan's own records; and (4) any suggestion that Rocha cannot work is belied by Rocha's employment. The Court concludes the ALJ's reasoning is sound.

First, Rocha does not specifically object to any of the ALJ's reasons. *See Wyatt v. Barnhart*, 190 Fed. Appx. 730, 732 (10th Cir. 2006) (explaining that a "general objection that the ALJ's decision was not supported by substantial evidence and that he failed to follow the correct legal standard is not sufficiently specific to focus the district court's attention) (citing *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). Second, the record does not reflect any specialization beyond Cerghizan's denomination as a nurse practitioner, and a treating source's expertise in the field is a permissible basis on which to give limited weight to an assessment. *See Watkins*, 350 F.3d at 1301. Third, as the ALJ explained, Cerghizan's records do not identify any limitations she believes Rocha's anxiety and PTSD impose, which speaks to an overall lack of evidentiary support. *See id.* (listing evidentiary support as factor to consider in determining weight).

Fourth, Cerghizan's records document the therapeutic benefit Rocha derives from building and fixing trucks, which is at odds with the suggested inability to work. *See id.* (identifying inconsistency as factor to consider). Finally, as the ALJ points out, any conclusion that Rocha is unable to engage in substantial gainful activity is undermined by his full-time employment. *Cf. Pisciotta*, 500 F.3d at 1077 (explaining that the ALJ does not need to assign

controlling weight to opinion that is inconsistent with the whole record); *Watkins*, 350 F.3d at 1301.  In sum, the ALJ did what the law requires: she clearly identified the reasons for assigning Cerghizan's opinion little weight and gave good reasons for her conclusion.

### ii. William Summers, M.D.

Dr. Summers examined Rocha twice and completed a "Mental Impairment Questionnaire." [AR 708-709].  Dr. Summers ultimately concluded Rocha's mental impairments render him "[in]capable of performing a full-time job, working 8 hours a day, 5 days per week, on a regular and continuing basis[.]" [AR 709].  In making this assessment, Dr. Summers opined that Rocha was "moderately" limited in his abilities to "understand, remember and carry out simple instructions"; "work in coordination with or proximity to others without being distracted"; "make simple work related decisions"; "maintain socially appropriate behavior and adhere to basic standards of neatness/cleanliness"; and "respond appropriately to changes in the workplace." [AR 709].  Dr. Summers further evaluated Rocha as "markedly" limited in his ability to "maintain attention and concentration for extended periods"; "perform activities within a schedule, to be punctual and maintain regular attendance"; and "accept instructions and respond appropriately to criticism from supervisors." [AR 709].   Rocha, however, was only "slightly" limited in his ability to "remember locations and work-like procedures"; and "interact with the general public."  [AR 709].

The ALJ assigned Dr. Summers' evaluation "limited" weight for two reasons: (1) Dr. Summers lacked an extensive treatment history with Rocha; and (2) Dr. Summers' opinion is inconsistent with the record evidence demonstrating Rocha can work.  The Court concludes that the ALJ's analysis is proper.

First, as before, Rocha does not challenge any specific aspect of the ALJ's determination with respect to Dr. Summers. *See Wyatt*, 190 Fed. Appx. at 732 (requiring the plaintiff to specifically object). Second, the ALJ correctly noted that Rocha's *full-time* employment contradicts Dr. Summers' assessment that Rocha's limitations preclude work, which allowed her both to reject the opinion as controlling and to afford it only limited weight. *See Krauser*, 638 F.3d at 1330 (a treating source's opinion is not controlling where inconsistent with the record); *Watkins*, 350 F.3d at 1301 (record consistency is a factor in determining the weight to give a source's opinion). Finally, as the ALJ explained and record bears out, Dr. Summer only met with Rocha twice. While the Court is not overly concerned with this low number of consultations, its combination with Rocha's ability work make the low number of consultations significant—Dr. Summers does not square Rocha's full-time employment with the Doctor's contrary conclusion of disability to work.

Because the ALJ properly followed the law and substantial evidence supports her consideration of Rocha's treating sources, the Court affirms her determination that Rocha was not disabled under the Social Security Act.

### b.  Substantial evidence

Rocha's final attack on the ALJ's determination as unsupported by substantial evidence merits little discussion. It is not specific enough to permit meaningful review. *See Wyatt*, Fed. Appx. at 732. In the general sense in which Rocha makes the challenge, it is also incorrect. At the core, "[d]isability is established by showing a medically determinable mental or physical impairment which prevents engaging in any gainful activity." *Alexander v. Richardson*, 451 F.2d 1185, 1186 (10th Cir. 1971). The "[i]nability to engage in any gainful activity and the impairment which causes it cannot be separated" and [t]he two components of disability must

exist at the same time." *Id.* Substantial evidence shows Rocha has had a difficult life and struggles with anxiety and PTSD as a result. These impairments, however, do not change the substantial evidence that Rocha can and has worked full-time. In other words, although the impairment component of disability is present, Rocha is still able to engage in substantial gainful activity, the second half of the equation.

Even if the Court could reach the opposite conclusion, the ALJ's decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar*, 468 F.3d at 621. The uncontroverted evidence that Rocha engaged in substantial gainful activity while allegedly disabled prevents the Court from reaching a different outcome. The Court therefore affirms the ALJ's determination.

## IV.  CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision should be affirmed. **IT IS, THEREFORE, ORDERED** that Plaintiff's motion to reverse or remand [Doc. 20] is **DENIED** and this matter is **DISMISSED WITH PREJUDICE**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent